NATCHEZ DRUG COMPANY, Plaintiff, Appellee, v. RATEKIN SEED HOUSE and J. W. RATEKIN, Defendants, Appellants.

**Sales:** IMPLIED WARRANTY: BREACH: EVIDENCE.  To recover on an implied warranty that corn sold for seed was suitable for that purpose there must be substantive proof of its unfitness; mere complaint of purchasers that it was unfit is not sufficient.  Thus where defendant sold plaintiff a large quantity of seed corn for the retail trade, agreeing to refund the purchase price of all that was returned by customers as unfit for seed, mere proof that numerous complaints were made, without any showing that it was in fact unfit for seed or that it was returned to plaintiff would not authorize recovery.

**Evidence:** OFFER OF SETTLEMENT: ADMISSION.  A mere offer by defendant to allow the claim sued upon if plaintiff would accede to certain conditions imposed as a part of the offer is not an admission of the claim.

**Sales:** BREACH OF WARRANTY: RECOVERY.  Where a wholesaler of seed corn, when notified by the retailer that a part of the shipment still in his possession was unfit for the purpose of planting, instructed the retailer to sell the same for the best obtainable price and agreed to reimburse him for the loss, he was entitled to recover the difference between the amount received and the price paid.

**Judgments:** PARTIES: SUFFICIENCY OF EVIDENCE.  An allegation that an individual defendant conducted his business under a trade name, was sufficiently supported by the uncontradicted evidence of a single witness to that effect, and authorized a judgment against defendant individually.

*Appeal from Page District Court.*—HON. THOMAS ARTHUR, Judge.

TUESDAY, APRIL 14, 1914.

ACTION to recover on a contract in which it is claimed that the defendant agreed to reimburse plaintiff for all losses which plaintiff sustained by reason of the failure of certain

seed corn purchased by plaintiff, a retailer, from the defend-
ant, to meet defendant's warranty that it was fit for the
purposes for which it was sold.—*Affirmed* on condition.

*Earl R. Ferguson* and *C. R. Barnes,* for appellants.

*Jennings & Mattox,* for appellee.

GAYNOR, J.—On the 9th day of November, 1909, the
plaintiff ordered from the defendant a car load of seed corn
to be shipped to the plaintiff on January 10, 1910. The corn
so ordered was shipped on January 25, 1910, and received by
the plaintiff on the 10th day of February, 1910, and contained
seven hundred and seventy bushels, for which the plaintiff
agreed to pay the defendant $1.15 a bushel. Upon receipt of
the same, plaintiff proceeded to, and did sell, small quantities
at retail to various persons, and in this way disposed of all the
corn received except one hundred and thirty bushels. The
sales were made in quantities of one, two, four, five, six, seven,
and ten bushels each to various parties throughout the states
of Mississippi and Louisiana and other territory contiguous
to plaintiff's place of business, commencing with the opening
of the farming season and continuing along through the plant-
ing time of that season.

Plaintiff claims that some weeks after the sale of said corn,
it received numerous complaints from purchasers that the corn
was totally unfit for seed; that as soon as these complaints
were received, it notified the defendant by letter, dated March
16, 1910, as follows:

Ratekin Seed House, Shenandoah, Iowa—Gentlemen:
Find inclosed copy of a letter received from one of our good
customers, together with a sample of corn, about which he is
complaining, Silver Mine, to which we call your careful at-
tention. Since receiving this letter we have emptied out all
of the corn remaining on hand, of which we have eighty
bushels Pride of Nishna and forty-two bushels of Iowa Silver

Mine, samples of which we are sending under separate cover, and all of which appears to be more or less damaged from the sweat and damp condition in which we received same from you, and in its present condition, we are afraid to put out any more of the corn, and are also afraid that we will have many more complaints from the corn sold and delivered from this shipment. We will await your response as to what can be done in the matter, as we fear serious trouble is going to result from the condition of this seed and through no fault of ours, as since its receipt we have stored same, each sack on end, and over a large amount of floor space, giving each sack as much opportunity as possible to dry out and to receive a circulation of air. Awaiting your immediate response, with best wishes, we remain, Yours truly, Natchez Drug Company.

To which defendant made the following reply:

Shenandoah, Iowa, 3/18/1910. Natchez Drug Co., Natchez, Miss. Gentlemen:—Replying to your favor of the 16th, beg to say that we have read your letter carefully and also the copy of letter that you wrote to Mr. T. B. Nugent, Wildsville, La. I think the letter that you wrote to him a very judicious one, but if you have any more complaints coming to you from any source whatever, tell them that if the seed is not entirely satisfactory, to ship it back to you at your expense, and you will cheerfully refund the money paid for it. Tell them that all of the seed corn that you send out from the Ratekin Seed House is guaranteed to be satisfactory, the purchaser to be the judge and the jury and any seed that is not found satisfactory on receipt and examination may be returned to you and the purchase price paid for it will be cheerfully refunded. We have been in the seed business for the past twenty-six years and during that time there have been many just complaints that have come to us and there has also been an equal quantity of unjust claims, and if you will cater to all of the complaints that come to you, I don't care on what, even on drugs, if they find that they can complain and get their money back, you will give away your profits faster than you can make them. As to the seed that you have on hand, I would hesitate about sending it out, and if you will adhere to what we have told you, we will protect you against any seed that may come back to you. Very truly yours, Ratekin's Seed House.

On March 21, 1910, the plaintiff sent the following letter to the defendant:

Ratekin's Seed House, Shenandoah, Iowa—Gentlemen: We have your letter of the 18th and thank you for your prompt response, and, acting on your suggestion, we will withhold from further shipment all of the corn on hand and will await your instructions as to what disposition to make of the same. We find that in addition to the amount mentioned in our letter of the 3/16th, we have on hand several sacks that were in another part of our building, and not included in that account. We regret very much the condition of this shipment and especially at this time, as we will probably have call for the entire amount on hand, and it will deprive us of the profit on these sacks. We sincerely hope that we will have no further complaints on the corn already delivered, but, from the condition of that remaining on hand, we feel there will be numerous complaints as to the germinating qualities of the corn, and had we noted condition of corn, would not have made shipment, but are hoping that the early shipments were planted at an early date, before the condition became so serious as seems to be in the sample returned us by Mr. Nugent, which is decidedly worse than the samples we sent you under separate cover. Awaiting your response, we remain.

To which the defendants replied as follows:

Shenandoah, Iowa. 3/24/1910. Natchez Drug Co., Natchez, Miss.—Gentlemen: We have your favor of the 21st inst. and in reply beg to say that when you sent out our seed corn you are absolutely at liberty to guarantee it to be satisfactory and if not found so they may return it within ten days from the time received, at your expense, and the money paid for it will be cheerfully refunded. We cannot, neither can any legitimate seed house, guarantee a crop of corn. With regard to the seed that you have had returned would say that I would make the best disposition of it that you can, also the seed that you have on hand. Handle it in a business way and get the most out of it that you can and any loss you sustain from any seed you have on hand or any seed returned to you, we will make good to you. We want

you to feel that we are always ready to help and assist our customers in every way that we can. A good business man appreciates what is right from wrong, and that is all he expects from anyone and all he should expect from us.

To which plaintiff replied as follows:

Natchez, Miss., 3/26/10. Ratekin's Seed House, Shenandoah, Iowa—Gentlemen. Replying to your letter of the 24th, we thank you for your candid, fair and business like proposition; that we meet the damage and dispose of same to the best advantage, and that you will settle promptly on receipt of bill for our losses. We regret to state that every day brings in more complaints, and we are not only to lose the sale of the corn on hand and some previously delivered, but that it is a source of dissatisfaction and actual loss to our customers who have put this corn in the ground and have lost their labor and early planting season, and are thrown on the market for seed at a time of the year when we cannot supply them, nor is there at all times reliable seed in the open market that they can get. We feel sure you will realize this condition and can only do what is fair and adjust same but at the same time, if it is possible to prevent such a condition, you should certainly have taken every precaution to protect yourselves as well as us against the possibility of such damage. Assuring you of our best wishes, we remain, Natchez Drug Co.

Plaintiff further wrote on March 31, 1910:

Ratekin's Seed House, Shenandoah, Iowa—Gentlemen: Since your letter of the 24th and our reply of the 26th, we today have an offer of 40 cents per bushel for all of the corn on hand, with the exception of a few bushels that are too bad even for the feeding to hogs. This offer is made by one of our hog growers, who expects by having same ground and mixed, to be able to use it for hog feed. We will try to do better, but are inclined to advise you to accept this offer, as so far several parties refused to make us an offer and there is other damaged corn on the market to say nothing of corn meal that can be picked up very cheap. Awaiting your response, we remain.

To which defendants replied as follows:

Shenandoah, Iowa, 4/4/10. Natchez Drug Co., Natchez, Miss. We have your favor of the 31st ult. and contents noted. In reply would say that you are on the ground and understand the condition of the corn and its value better than we do at this distance, and we have the utmost faith in your judgment, honesty and ability, and, therefore, request that you go ahead and make the very best disposition of the damaged corn that you can, and we will rebate or refund to you any loss that may accrue to you on this corn, reducing the price from seed corn to conform to the price you sell it at. In making sale of this corn, I wish you would consider the sacks, that is to say, try to get something out of them in the sale, or if included in the sale, that is, if they are not damaged. These sacks cost 10c each by the 5,000 lots. As soon as you have disposed of this corn, I wish you would send us full statement and we will immediately adjust the matter with you.

Plaintiff claims that, acting upon instructions from defendant as set out in the above letters, it refunded to dissatisfied purchasers of seed corn the amount the purchasers had paid plaintiff therefor; that the total number of bushels for which refund was made was sixty-three for which plaintiff paid defendant $1.15 a bushel, or $72.45, making the total amount, refunded by plaintiff to its purchasers at cost price on account of the damaged condition of the corn, $72.45. Plaintiff further claims that the one hundred and thirty bushels of corn which it did not sell, and which was about spoiled and unfit for seed, referred to in the correspondence hereinbefore set out, was disposed of by it at the best possible price obtainable therefor, and it received for the same fifty cents per bushel, or $65; that it paid defendant $1.15 a bushel for this corn, and therefore lost, by reason of the condition of the corn, $84.50, making a total loss to the plaintiff of $156.95, and for this it asks judgment. The defendant, answering plaintiff's claim, denies each and every allegation contained in plaintiff's petition, and for answer says that if any of the

corn was spoiled, or not in good condition, plaintiff alone was responsible therefor; that the condition was due to plaintiff's negligence in keeping it in damp and unsuitable places, and further says that any damage that the plaintiff may have sustained was waived by the plaintiff, in that plaintiff paid the defendant the purchase price of the corn without protest, and with full knowledge of all the facts. Upon the issues thus tendered, the cause was tried to a jury, and at the conclusion of all the testimony, the court directed a verdict for the plaintiff, and judgment being entered thereon, defendant appeals.

Upon the trial of the case, all the letters hereinbefore set out were fully identified and introduced in evidence, together with the following letters written by the defendant to the plaintiff and by the plaintiff to the defendant:

Shenandoah, Iowa, 7/15/10. Natchez Drug Co., Natchez, Miss.—Gentlemen: We have your letter of the 8th inst., and in reply would say that I have personally gone over all correspondence with you, including the letters referred to in your communication, and find that we did agree to protect you against loss to any reasonable degree, and will say here that I believe you accepted our promise in good faith—on our part it was made and given.in equal good faith, but at that time we had no expectation that it would reach the dimensions it has. We, however, are not censuring you in the least, as we appreciate your honesty and business ability, and have not a single doubt but what you exercised good business judgment. But a loss of $130.50 on one carload of seed struck us a pretty hard jolt, especially so when it is considered that the way the seed corn question turned out, including cost of corn, extra expense in handling and preparing it, we did not make $10 on the car at full price we sold it to you for. But we are making no kick on this, never cry over spilt milk. But in view of making this allowance of $130.50 to you on this car, which is dead loss to us, we feel that you ought to carry this amount, temporarily over to apply on next year's account. In fact, this was practically what we had in mind when we last wrote you, under date of 30th ult. But perhaps you did not understand it that way. Now gentlemen, we are willing to make you this allowance, claim,

but really think that you should temporarily carry this loss over to apply on next year's account. We don't want you to infer by this that we have any thought of making you prices in excess of that we sell to others for, freight rates, etc., considered, but we would like in part at least to make our transaction with you wash its own hands. Right here, we will confess that the seed corn question was a hard proposition all around; the worst we have ever experienced in all our 26 years in business, and we do not expect to see another one as hard in the next twenty-five years. But whatever may be the conditions, one thing sure we are going to see to it and know that another year no customer of ours shall have any reason to find fault or complaint with any seed corn that leaves the Ratekin Seed House. Hoping this arrangement will be satisfactory with you, we remain.

Natchez, Miss., 5/20/10. Ratekin's Seed House, Shenandoah, Iowa.—Gentlemen: Following our several letters about the damaged seed corn, purchased from you, we enclose you herewith statement of the amount we had to pay in refunds, including the two lots of 130 bushels sold for your account, at 50c a bushel, leaving balance due us, as per statement, $130.50. You will notice this does not include any loss that we had to sustain in the way of profits on the several sales made, nor for the entire lot that we could have readily disposed of had it not been for this damaged condition. You will notice also that we secured for the one hundred thirty bushels, 50c instead of 40c, as first wrote you 3/31, and in addition to this, following your suggestion, got one of these parties to return most of the sacks, and we think we now have on hand for you about fifty sacks, which we can return to you if you so desire. Trusting you will send us your check by return mail, for this amount, that we may close this matter, and thanking you in advance, with best wishes, we remain.

Natchez, Miss., 6/24/10. Ratekin's Seed House, Shenandoah, Iowa.—Gentlemen: Since writing you on the 5/30 at which time we inclosed you itemized account of refunds and report on damaged corn, due us $130.50, we now inclose three addition claims received since for which find invoice, together with the three claims attached—$26.45. Making a total, as per account rendered—$156.95. We are surprised not to

have received acknowledgment and remittance from you for the previous report and now ask that you favor us with the entire amount, and failing to hear from you promptly, shall make sight draft on you for the amount $156.95. Thanking you in advance for an early payment, we remain.

Natchez, Miss., 7/8/10.  Ratekin's Seed House, Shenandoah, Iowa.—Gentlemen: We have your letter of the 30th and are surprised and can only account for same that it is written by some one in your office not familiar with the conditions and agreements, and before replying as the situation seems to justify, will refer you to the back letters that your files should show, wherein we have acted under instructions and your agreement to refund us for these amounts, and if you so desire can submit you receipted vouchers for each item. Kindly look on your files: Our letter March 16th wherein we took up this matter. See your letter 3/18 in reply, again, Our letter 3/21 and your reply 3/24, again Our letters 3/26 and 3/31 and especially yours 4/4. We understand the general conditions and guaranties, and have confined our business to your house for that very reason, that we considered you reliable and your guarantee good. We have protected your interests as far as possible, in every one of these refunds, and have lost our profit on each sale by reason of the condition of this seed samples of which we sent you promptly and your instructions sent out not more and disposed of the stock on hand as directed. We expect you to make up prompt payment of the two bills as rendered in New York exchange. This is a business proposition, you have our money and we expect it back at once and there is no occasion of delay for your Mr. Ratekin to call. Expecting your immediate response, we remain.

Natchez, Miss., 7/18/10. Ratekin's Seed House, Shenandoah, Iowa.—Gentlemen: Your letter of the 15th received and while you are compelled to admit our claim, we are surprised that you should make such a request, that we wait and allow the amount you are due us to apply on another car to be purchased next year. We do not think your position even justifies us in making further reply, other than to state that if you will go into the matter and look over the letters and our billing you will find that the largest item is for the seed on

hand and in our house and found spoiled on examination and sample was sent you and we followed out your instructions and protected you as far as possible, and were it not for our careful handling of this matter, further claims would have been filed and we still have two or three just ones that we will no doubt have to settle. You are at fault in ever allowing seed to go out in such condition and we made no question of the contents of the sacks, relying, as heretofore, on the Ratekin Branded Sacks as our guaranty of quality, and our trade accepted our word for it without question. Had we for one moment doubted your reliability, we could easily have stopped payment on our paper then in your hands, but we have not only lost the use of this money but the profit on all of our sales that had to be refunded and no doubt in some instances, will affect these buyers another year. We therefore ask that you remit us in New York Exchange, without further delay, the amount of our two invoices. Expecting a reply by return mail, and awaiting same, we remain.

Natchez, Miss. July 25, 1910. Ratekin's Seed House, Shenandoah, Iowa—a/c Mr. J. W. Ratekin, Manager. We have your letter of the 22d and hope that by this time and after more mature reflection, you will reconsider your letter of that date and honor our draft (copy of which we inclose herewith), on the Shenandoah National Bank for $156.95 with exchange. You certainly do not think that we will expect less from you than covered in our previous letters, and your admission of our adjustment of this matter according to your letters directing same. We do not threaten you, nor do we mean to take seriously your last letter, the payment or rejection of this draft will be your last answer, and we hope for payment now without further controversy. Awaiting your response, we remain.

Shenandoah, Iowa, 6/30/10. Natchez Drug Co., Natchez, Miss.—Gentlemen: We have your favor of the 24th inst. with statement of refunds and report of the damaged corn claiming $130.50, with three additional claims amounting to $26.95, making a total of $156.95. In reply to your letter and with regard to these claims would say that we do not give any guaranty, expressed or implied, on any seed that we sent out. We cannot guarantee losses any more than we

could undertake to guarantee profits, but we want to assure you that we deal with our customers in the most liberal spirit, and we are willing to help you out, but we do not feel as though we ought to be required or should be expected that we are always going to make good losses any more than we would undertake to guarantee profits on seed sold by us. We do not know of any wholesale or retail house in the country that goes that far. When our Mr. Ratekin calls on you along the last of October or middle of November, he will take the matter up with you and do what is right. We very much appreciate your business, and want it, and especially so in cases where it is remunerating to us, or in cases where we can come out even. We have found in some cases, and not a few that where dealers can presumably adjust matters with their customers at our expense, they are sometimes more liberal than good business principles justify.

Shenandoah, Iowa, July 28, 1910. Natchez Drug Co., Natchez, Miss.—Gentlemen: Your letter of the 25th inst. is at hand, and contents duly noted. We are very sorry that you have made a draft on us for $156.95, the amount of your claim against us, as we do not like to turn down drafts that are presented to us, however, it was necessary for us to order this returned to you refused. We have been doing business with your firm for several years and we can candidly say that for the past five years, we have not done a season's business with you that showed a profit our way, and we feel that we have offered you a fair and square proposition when we offered to allow you the credit of this amount on your next year's business, as set forth in our letter of the 22d. We have been repeatedly approached by other firms in your territory to handle our business there, yet on account of the years that we have had dealings with you, we have each and every time, put them aside. The matter of refunding for seed corn is a very serious one. We do not object to handing back the good cold cash to those people who have examined their seed and returned the same to us within ten days, but when it comes to insuring crops and results, we cannot and will not do this, as we are not running an insurance business; that is an entirely separate line from the seed business. When a man buys seed corn and plants it, he is supposed to buy with his eyes open, and if possessed with ordinary intelligence, should be able to know whether the corn is

satisfactory to him or not, and if not, he should at once make his objections and not wait until the corn has not grown, and come upon those, from whom he purchased the seed, to make it good which perhaps has failed to grow from cause other than the vitality of the seed. We are not blaming you, but we simply speak of this that you might the better understand that a pocketbook opened, the contents will soon disappear, and that there ought to be a limit to refunds that would bring them within the thoroughly legitimate line. We hope that you will look on this in the right light, and will consent to allow the balance of $156.95 to stand over as against your next year's business. We have appreciated your patronage in the past 'and wish to retain your good will if it can possibly be done by strict adherence to legitimate business principles.

The only further testimony, offered by the plaintiff in support of its claim, is the testimony of John H. Chambliss, treasurer of the plaintiff company, and the only testimony given by him supporting plaintiff's contention is substantially as follows. After identifying the letters hereinbefore set out, he was asked this question. "Q. If you say or it appears from the exhibits [meaning the letters hereinbefore set out] that the Natchez Drug Company was authorized to guarantee that if said seed corn was not entirely satisfactory to purchasers, they might ship it back to the Natchez Drug Company, at its expense, and that it would cheerfully refund the money to them, state whether or not the Natchez Drug Company did make such guaranty to the purchasers of said corn, and, if so, whether or not any of said seed corn sold was sent back to the Natchez Drug Company, and said company refunded the money paid by the purchasers for the same, under said company's guaranty." To which he answered: "Acting under instructions of defendant, the Natchez Drug Company offered to protect those who complained of the seed corn being unsound and of no value, and we were called on to refund the purchase price in a number of instances. Q. Give the names and addresses of purchasers to whom refunds were

made, giving the date and amount refunded to each, and give the total amount refunded on such guaranty.'' Thereupon, he gave the names of the parties and the dates when the refunds were made, showing that they had refunded the purchase price for sixty-three bushels of seed corn, and the witness further answered that, in addition to the sixty-three bushels, there was one hundred and thirty bushels which plaintiff did not sell for seed corn, but had to sell at the best price obtainable, according to instructions of defendant, and that the best price obtainable, and for which it was sold, was fifty cents per bushel. The witness further testified that all of the seven hundred and seventy bushels received by the plaintiff from the defendant was sold for seed corn except one hundred and thirty bushels.

The plaintiff in his argument submitted to this court states that the entire transaction upon which the plaintiff bases his cause of action, is based on the letters and authority given appellee to guarantee the seed.

The court, in passing upon the motion to direct a verdict for the plaintiff said: ''This case is founded on the alleged contract. If the defendant is liable at all, its liability must be based upon the contract as found in these letters.''

There were seven hundred and seventy bushels received by the plaintiff in this shipment from the defendant. All of this was sold except one hundred and thirty bushels. Of the corn sold complaint was made by the purchasers of but sixty-three bushels. There is no evidence, in this record, that any portion of the sixty-three bushels was not, in fact, fit for seed. The only evidence is that some of the parties purchasing some of the corn received by the plaintiff from defendant complained that it was not fit for seed. To recover under an implied warranty that the seed was unfit for the purposes for which it was sold, there should be substantive evidence that it was not, in fact, fit for the purposes for which it was sold. A mere complaint that it was unfit does not establish its unfitness. The contract

1. SALES : implied warranty: breach : evidence.

made by the defendant with plaintiff, as found in these letters, is that it would reimburse plaintiff for all of this corn sold by it which proved unsatisfactory to the purchaser and was returned to the plaintiff because of that fact. There is no proof that any of this sixty-three bushels was or was not returned. There is no proof that it was, in fact, unsatisfactory. There is no proof but what it was planted by the purchaser; that it germinated and bore fruit.

The plaintiff relies upon the letter written by the defendant on the 18th day of March, in reply to the letter written by the plaintiff to the defendant on the 16th day of March. In this letter, defendant says:

If you have any more complaints coming to you from any source whatever, tell them that if the seed is not satisfactory to ship it back to you, at your expense, and you will cheerfully refund the money paid for it. Tell them that all the seed corn that you send out from the Ratekin Seed House is guaranteed to be satisfactory, the purchaser to be the judge and jury, and any seed that is not found satisfactory on receipt and examination, may be returned to you and the purchase price paid for it, will be cheerfully refunded. . . . There have been many just complaints that have come to us, and there has also been an equal quantity of unjust claims, and if you will cater to all the complaints that come to you, I don't care on what . . . if they find that they can complain and get their money back, you will give away your profits faster than you can make them. If you will adhere to what we have told you, we will protect you against any seed that may come back to you.

Upon what theory the court could hold defendant liable to the plaintiff for any amount refunded by the plaintiff to purchasers on proof merely that the purchasers complained of the corn, without proof that their complaint was well founded, without proof that it had not met the requirements of seed corn in germinating quality, we do not understand. Especially in view of the express statement of the defendant in its letters to the plaintiff that it would reimburse

plaintiff only for such seed corn as proved unsatisfactory and was for that reason returned to the plaintiff. It would be a harsh rule that required wholesale seed houses to refund to their customers the purchase price of seed corn upon a mere complaint that the seed corn was not fit for the purposes for which it was sold, without proof that it was not, in fact, fit for the purposes for which it was sold. To hold such a rule would leave the wholesaler absolutely at the mercy of the purchasers of the retailer, who, for the purpose of protecting his own trade, was willing to refund to his purchasers, upon mere complaint, the amount paid for the corn, at the expense of the wholesaler.

If plaintiff's right to recover for this sixty-three bushels be based entirely upon the contract expressed in the letters, it clearly appears that the defendant only offered to pay for the loss on corn returned. The evidence does not show that any corn was returned to the plaintiff. It is stated and restated, in every letter written by the defendant to the plaintiff nearly, that defendant would reimburse the plaintiff only for such corn as was returned to the plaintiff, and the evidence failed to show that any of the sixty-three bushels was returned, or that the corn not returned was of absolutely no value, as an excuse for failure to return. But the evidence discloses that the one hundred and thirty bushels not sold was, in fact, of some value. It appears that the plaintiff sold it for fifty cents a bushel.

It must be borne in mind that this is not a suit between the purchaser from the plaintiff and the defendant, and therefore none of the elements of damage which might inhere in a suit of that character inheres in this. This suit is predicated wholly upon the contract between the plaintiff and the defendant, and, as to the sixty-three bushels, we are satisfied the plaintiff has failed, in his proof, to lay a basis for recovery, upon the contract.

It may be claimed, however, that in letters written subsequently, the defendant admitted plaintiff's claim. The let-

tcrs, however, will not bear this out. They constitute simply an offer to allow plaintiff's claim, providing plaintiff would consent that it be temporarily carried over to the next year's account. It does not constitute an admission of plaintiff's claim, but an offer, under certain conditions, to allow the claim, providing plaintiff would accede to the conditions, and, further, it is apparent, from the whole record, that the case was not bottomed on this theory, nor tried and disposed of on the basis of a settlement and adjustment of the difference here in controversy. The court erred in directing a verdict for the plaintiff, as against the defendant, on this claim.

2. EVIDENCE: offer of settlement: admission.

The contract as to the one hundred and thirty bushels is entirely different. The defendant was notified by the plaintiff of the character of this one hundred and thirty bushels, and was sent a sample of it, and thereupon the defendant agreed with the plaintiff that the plaintiff might sell it at the best possible price obtainable, and the defendant would reimburse plaintiff for any loss. As to this claim the proof is sufficient, and the court did not err in directing a verdict, as to this, for $84.50, and, under the proof, as it appears in this record, the plaintiff was entitled to judgment against the defendant only for $84.50, with interest.

3. SALES: breach of warranty: recovery.

It is claimed, however, that the court erred in directing the verdict against the defendant J. W. Ratekin; that the record discloses that he was only agent for the other defendant, and, therefore, not liable personally, on the other defendant's contract.

4. JUDGMENTS: parties: sufficiency of evidence.

It is alleged, however, in the petition that J. W. Ratekin was the real defendant; that the Ratekin Seed House was only a name under which he transacted business. The only proof on this question was given by Chambliss, and he testified that the business was conducted in the name of the Ratekin Seed House, by J. W. Ratekin. This was sufficient proof of the plaintiff's allegation to justify a jury in finding a verdict

against him.   It is sufficient proof, uncontradicted, to establish the allegation of plaintiff's petition, and there was no error in directing a verdict against the defendant J. W. Ratekin for $84.50.

The judgment, therefore, will be reversed, unless the plaintiff, within thirty days from the filing of this petition, remits all of the verdict, except the $84.50, with 6 per cent. interest from September 1, 1910.   Unless plaintiff so elects within thirty days, the cause will stand reversed.   If he does so do, the cause stands affirmed.

The costs of this appeal are ordered taxed to plaintiff. ·
*Affirmed* on condition.

LADD, C. J., and DEEMER and WITHROW, JJ., concur.